UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARLOS S. CAMACHO,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON CAPITAL SYSTEMS, LLC,<br><br>Defendant. | Case No. 14-cv-02728-BLF<br><br>**ORDER**<br>**(1) GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION;**<br>**(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION**<br><br>[Re: ECF 34, 42] |

Defendant moves for summary judgment, or in the alternative for summary adjudication of issues, in this Fair Debt Collections Practices Act ("FDCPA") case. Plaintiff alleges that Defendant violated the FDCPA and California's Rosenthal Act by sending him collection letters after it was on notice that Plaintiff was represented by counsel. Defendant contends that Plaintiff's counsel did not give effective notice that Plaintiff was represented "with respect to the debt" at issue, and that, even if Plaintiff's counsel did give effective notice, Defendant's communications were the result of a bona fide error, entitling it to judgment as a matter of law. The Court finds for the reasons below that Defendant has established a bona fide error defense with regard to its contact with Plaintiff after it knew that Plaintiff was represented by counsel, and is entitled to summary adjudication on that issue.

After this motion for summary judgment was fully briefed, and after Plaintiff filed his own motion for summary judgment, Plaintiff sought leave to amend the Complaint to assert a second theory of liability under the FDCPA and Rosenthal Act, which the Court granted. Plaintiff nonetheless sought summary judgment as to this new theory, which was not yet included in the operative pleading. Because Plaintiff sought summary judgment as to a non-operative pleading,

the Court DENIES his motion for summary judgment, without prejudice to re-filing a summary judgment motion as to the new theory as pled in the FAC.

## I.   BACKGROUND

### A.   General Factual Background

This is a case about an attempt to collect on a debt. Plaintiff allegedly incurred a debt of approximately $1,880 for personal, family, or household purposes. After Plaintiff defaulted on the debt, it was assigned to Defendant for collection. Defendant, through a vendor, filed a state court action to collect the debt in Santa Clara County Superior Court, and served the summons and complaint on Plaintiff. On or about September 9, 2013, Plaintiff retained Fred Schwinn as counsel in the state court action, and Mr. Schwinn contacted Vijay Desai, Jefferson's counsel, to inform him that Mr. Schwinn was representing Plaintiff in the action.[1] On September 12, 2013, Defendant dismissed the state court action.

Then, on November 28, 2013 and again on January 24, 2014, Defendant sent Plaintiff collection letters stating an amount due of $2,186.84. Plaintiff contends that these letters were sent directly to him in violation of the FDCPA and Rosenthal Act prohibitions on direct communication with a debtor who the debt collector knows to be represented by counsel. Defendant's motion contends that (1) Mr. Schwinn did not effectively inform Mr. Desai that Plaintiff was represented "with respect to the debt" because his email to Mr. Desai said only that he was representing Plaintiff "in the above referenced case," and (2) that any communications sent to Plaintiff after this notification were the result of bona fide error.

### B.   Procedural History

Plaintiff filed his Complaint on June 12, 2014, which Defendant answered on July 9, 2014. ECF 1, 7. The Court granted Plaintiff's motion to strike Defendant's answer, ECF 18, and Defendant filed an amended answer, asserting a bona fide error defense, on October 15, 2014. Plaintiff's Complaint asserted violations of the FDCPA and Rosenthal Act, alleging that

---

[1] Mr. Desai was employed as an attorney at the Law Office of Curtis O. Barnes, one of Defendant's vendors. Defendant states that it "placed Mr. Camacho's account for collection with the Law Office of Curtis O. Barnes and utilized Presidio Financial, LLC as its agent regarding the accounts it placed with [the Barnes Law Office]." Def.'s Mot. at 1.

2

1    Defendant "continued to communicate directly with Plaintiff regarding the collection of the
2    alleged debt after Defendant knew that Plaintiff was represented by an attorney with respect to the
3    alleged debt." *See* Compl. ¶¶ 30(a), 38(a).
4        Defendant moved for summary judgment on March 19, 2015, and on March 28, 2015,
5    Plaintiff moved to file a first amended complaint. Before the Court ruled on the motion for leave
6    to amend, Plaintiff filed his own motion for summary judgment. ECF 42. This motion sought
7    summary judgment as to the claims in the original Complaint *and* with regard to the claims
8    Plaintiff had sought leave to include in the FAC. The Court thereafter granted Plaintiff's motion
9    for leave to amend, and Plaintiff filed the FAC on April 30, 2015, the same day Defendant's
10   opposition to Plaintiff's summary judgment motion was due. The FAC asserts, in addition to
11   Plaintiff's allegation that Defendant contacted him despite knowing that he was represented by
12   counsel, that Defendant committed additional violations of the FDCPA and Rosenthal Act by
13   misrepresenting the amount of the alleged debt and attempting to collect interest, fees, or other
14   charges that were not expressly authorized by the statutes. *See* FAC ¶¶ 37, 45.
15       On April 23, 2015, the parties appeared for oral argument on Defendant's motion. The
16   Court requested supplemental briefing regarding Defendant's bona fide error defense, which it
17   received on May 8, 2015. On May 15, 2015, the Court submitted Plaintiff's motion for
18   adjudication without oral argument. ECF 59.

19       **C.**    **Defendant's Alleged Undisputed Material Facts**

20   On September 9, 2013, Mr. Schwinn sent an email to Vijay Desai, which stated:

> We have today been engaged to represent Carlos Camacho in the above referenced case. Our client is currently looking for any documents that he may have regarding this account. With this email we request a 30 day extension of time in which to file an Answer or other responsive pleading on behalf of our client. . . . Please simply respond with an "Agreed" if our requested extension of time is granted.

25   FAC Exh. 2 at 1.
26       Mr. Desai responded "Agreed." *Id.* Thereafter, on September 12, 2013, Mr. Desai
27   dismissed the state court complaint without prejudice. *See* Becker Decl. ¶ 5. Jefferson Capital
28   states that the state court action was dismissed by Mr. Desai without Defendant's knowledge or

1  approval. *See id.* Following this dismissal, Defendant sent collection letters directly to Mr.
2  Camacho on November 28, 2013 and again on January 24, 2014, in an attempt to collect on the
3  debt owed. *See* Becker Decl. ¶ 6 Exh. C.

4      Defendant states that it was never advised that Plaintiff was represented by counsel by
5  either the Barnes Law Office or Presidio Financial, and that Defendant only became aware that
6  Plaintiff was represented by counsel after he filed this lawsuit. *See* Becker Decl. ¶¶ 5-6. Defendant
7  further states that it has written policies regarding compliance with the FDCPA which specify that
8  once an employee knows that an individual is represented with regard to a debt that is being
9  collected by Defendant, Defendant's employees are not to communicate directly with the debtor
10 (except under certain circumstances not relevant here). *See* Becker Decl. ¶ 7; Exhs. D, E, F.
11 Defendant has a written Vendor Manual that requires its vendors, such as Mr. Desai and the
12 Barnes Law Office, to transmit to Defendant information regarding whether a consumer is
13 represented by counsel for purposes of the debt in question, so that Defendant will not directly
14 communicate with that debtor. *See* Becker Decl. ¶ 7; Exhs. A, G.

15 **II.  LEGAL STANDARD**

16     Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary
17 judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions
18 on file, together with the affidavits, if any, show that there is no genuine issue as to any material
19 fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v.*
20 *Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The Court draws all reasonable
21 inferences in favor of the party against whom summary judgment is sought. *See, e.g.*, *Matsushita*
22 *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Partial summary judgment that
23 falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to
24 limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D.
25 Cal. 1987) (citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981)).

26     The moving party "bears the burden of showing there is no material factual dispute," *Hill*
27 *v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court
28 the portions of the materials on file that it believes demonstrate the absence of any genuine issue

of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In order to meet its burden, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513-14 (N.D. Cal. 1995). The court "determines whether the non-moving party's specific facts, coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party." *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008).

**III.   DISCUSSION**

   **A.   Defendant's Motion**

Defendant makes two arguments in support of summary judgment. First, it contends that Mr. Schwinn's email to Mr. Desai did not apprise Defendant that Plaintiff was represented with respect to the debt because the email stated only that Mr. Schwinn was representing Plaintiff "in the above referenced case." Second, it argues its act of sending two collection letters to Plaintiff was a result of bona fide error. The Court considers both arguments in turn.

   **1.   Whether Defendant knew that Plaintiff was Represented by Counsel**

Under both the FDCPA and Rosenthal Act, a debt collector may not directly communicate with an individual debtor in connection with his or her debt when the collector knows that the consumer is represented by counsel. *See* 15 U.S.C. § 1692c(a)(2) ("[A] debt collector may not communicate with a consumer in connection with the collection of any debt [] if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address."); *see also* Cal. Civ. Code § 1788.14(c) ("No debt collector shall . . . initiat[e] communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in

5

1  writing by the debtor's attorney that the debtor is represented by such attorney with respect to the
2  consumer debt and such notice includes the attorney's name and address . . . ."). Defendant argues
3  that Plaintiff cannot meet his burden of persuasion at trial as to his claim that Defendant contacted
4  him despite being aware that he was represented by counsel, because "Mr. Schwinn did not advise
5  Mr. Desai that his representation was for anything other than the [state court] Collection Action.
6  Reading Mr. Schwinn's email at face value and giving his words their ordinary meaning, once the
7  Collection Action was dismissed there was not attorney representation." Mot. at 3, 4.

8        The Court finds Defendant's argument unpersuasive because Mr. Schwinn clearly
9  indicated to Mr. Desai that he was representing Plaintiff with regard to the debt. The "above
10 referenced case" Mr. Schwinn references in the email is a debt collection action brought by
11 Defendant in order to collect on Plaintiff's debt. *See* FAC Exh. 2. Neither the FDCPA nor
12 Rosenthal Act demands that an attorney use "magic words" when informing a debt collector about
13 his or her representation of a debtor. The plain language of the FDCPA, in fact, compels the
14 opposite conclusion: Section 1692c(a)(2) prevents a Defendant from contacting a consumer "if the
15 debt collector knows the consumer is represented by an attorney," without demanding that that
16 knowledge come directly from the debtor's attorney. *See also Goins v. JBC & Assocs., P.C.*, 352
17 F. Supp. 2d 262, 272-73 (D. Conn. 2005) ("As the Federal Trade Commission commentary on
18 [Section 1692c(a)(2)] explains, "[i]f a debt collector learns that a consumer is represented by an
19 attorney in connection with the debt, *even if not formally notified of this fact*, the debt collector
20 must contact only the attorney and must not contact the debtor.") (citing FTC Commentary at 53
21 Fed. Reg. 50097, 50104 (1988)) (emphasis added). Though the Rosenthal Act requires the
22 communication to come from the debtor's attorney, *see* Civil Code § 1788.14, it also only requires
23 that the notification be "with respect to the consumer debt." *See id.*; *Alkan v. Citimortgage, Inc.*,
24 336 F. Supp. 2d 1061, 1064-65 (N.D. Cal. 2004).

25       Here, Mr. Desai was informed directly by Mr. Schwinn's email that Mr. Schwinn and the
26 Consumer Law Center were representing Plaintiff with respect to the debt because the email stated
27 that Mr. Schwinn was "represent[ing] Carlos Camacho in the above referenced case." FAC Exh. 2.
28 Representation in a debt collection action is representation with respect to the debt. *Cf. Goins* at

6

273. Defendant is therefore not entitled to summary adjudication as to either the FDCPA or Rosenthal Act claims that arise from Plaintiff's allegation that he was contacted directly despite being represented by counsel, because Mr. Schwinn's email to Mr. Desai informed Defendant that Plaintiff was represented by counsel with respect to his consumer debt.

### 2. Defendant's Bona Fide Error Defense

Defendant further argues that it is entitled to judgment as a matter of law as to its bona fide error defense. Section 1692k(c) of the FDCPA states that "a debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." The Rosenthal Act includes a near-identical provision, stating that "[a] debt collector shall have no civil liability to which such debt collector might otherwise be subject for a violation of this title, if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation." Cal. Civ. Code § 1788.30(e).

"To qualify for the bona fide error defense . . . the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors. [] The procedures must be explained, along with the manner in which they were adapted to avoid the error." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008). At summary judgment Defendant bears the burden of proof as to this defense, and the Court makes all reasonable inferences in Plaintiff's favor. *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994).

In support of its bona fide error defense, Defendant points to a policy handbook, the Vendor Network Operations Manual ("Vendor Manual"), which it claims requires "its vendors to transmit information to the extent that a consumer is represented by counsel so Jefferson Capital will not communicate with that individual." Becker Decl. ¶ 7 Exh. G. The Vendor Manual instructs vendors that "[i]f an account is represented by an attorney an address maintenance file must be sent to overwrite the current account address." *Id.* Exh. G at 15. The Vendor Manual also gives specific instructions to its vendors on how this overwrite must occur when a vendor learns

7

that a debtor is represented by counsel. *See id.* at 16 (stating that a vendor must "send [the] consumer maintenance file update with [the] attorney's information," including the name and address of counsel, as well as send an "Account Ledger Activity update" which denotes that such a change was made to the file). Defendant argues that this written vendor policy is "reasonably adapted" to avoid the error that gives rise to this suit.

Plaintiff makes two main arguments in opposition. First, he argues that Defendant has "submitted no evidence that [the Vendor Manual] was ever provided to Mr. Desai, or that Mr. Desai . . . was ever trained how to proceed when the consumer retains counsel." Pl.'s Supp. Mem., ECF 53 at 2. Second, he argues that a bona fide error defense requires "not only initial compliance procedures, but additionally, a separate preventative mechanism for catching errors" that Defendant has not shown. *See id.*

Neither the FDCPA nor Rosenthal Act "require debt collectors to take every conceivable precaution to avoid errors," and instead require only that debt collectors take "reasonable precaution[s]." *See, e.g.*, *Kort v. Diversified Coll. Servs., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005). Here, Defendant has met its burden to show that, as a matter of law, it is entitled to a bona fide error defense. First, it provides a declaration by Angela Becker, Defendant's Agency/Attorney Vendor Manager, in which she declares that neither "[the Barnes Law Office] nor Presidio [Financial] specifically advised Jefferson Capital that Mr. Camacho was represented by counsel in the Collection Action when the account was returned to Jefferson Capital." Becker Decl. ¶ 5. Plaintiff does not contest this fact. A plain reading of the Vendor Manual shows that the policy in question was reasonably adapted to avoid this error – it demanded that all vendors, upon learning that a debtor was represented by counsel, take action to transmit that information to Defendant and overwrite the previous contact information of the debtor, so as to prevent Defendant from directly contacting a debtor in violation of the FDCPA or Rosenthal Act. *See* Vendor Manual, Becker Decl. Exh. G at 16. Defendant also points to a PowerPoint slide used in FDCPA compliance training which states that "[e]ven if no information is provided by the consumer or if you are informed by a third party that the consumer has an attorney, UPDATE THE ACCOUNT TO AN ATTY STATUS." *Id.* Exh. D at 1. In this case, Mr. Desai failed to follow this policy prior to

returning the file to Defendant.

Plaintiff's first contention, that there is no testimony from Mr. Desai that he received and was trained on the Vendor Manual, in unavailing. Plaintiff points to several cases in which courts have looked to affidavits from the employee who has committed the error, but cites no case that demands the employee who failed to comply with the policy testify regarding his receipt and knowledge of the policy. In *Basich v. Patenaude & Felix, APC*, the only case from this district cited in Plaintiff's supplemental memorandum, the Court found that there was a triable issue of material fact regarding the bona fide error defense because the defendant "provided only one declaration . . . that vaguely describ[ed] the procedures in place." 2013 WL 1755484, at *9 (N.D. Cal. Apr. 24, 2013) The bare-bones declaration in *Basich* described the procedures as "various investigations throughout the five years of collection efforts and the use of different sources to verify the identity of the debtor," and failed to point to an actual written policy. *See id.* at *9 n.5. Here, in contrast, Defendant provides a declaration which describes the training and policies in place, attaches the Vendor Manual with the specific written policy, and declares that all vendors are requested to transmit to Defendant information regarding whether a debtor is represented by counsel so that Defendant will not contact that debtor. *See* Becker Decl. ¶ 7. This is not a vague description of a policy, but rather a clear articulation of the policy itself and a description of how that policy is provided to Defendant's vendors.

Plaintiff's second argument fares no better. Plaintiff argues that a Defendant asserting a bona fide error defense must show both an initial compliance procedure and a second level of preventative measures that would catch errors. The cases cited by Plaintiff in its opposition or supplemental memorandum do not support this assertion. Instead, these cases state that a defendant must point to a policy, rather than just training procedures, and that the policy must be reasonably adapted to prevent the specific error at issue. *See, e.g.*, *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 529 (E.D. Pa. 1996); *Johnson v. Eaton*, 873 F. Supp. 1019, 1028 (M.D. La. 1995). Unlike in those cases cited by Plaintiff, Defendant has pointed to a written policy – provided by Defendant to its vendors – which is designed to prevent this *particular* error: vendors, when they learn a debtor is represented by counsel, must take specific steps to inform

1  Defendant of this fact and overwrite the account address to reflect the attorney's address.

2      The Court finds based upon the undisputed facts, including the Vendor Manual, that as a
3  matter of law Defendant's policy is reasonably adapted to prevent the error that occurred in this
4  case – Defendant contacting Plaintiff despite Plaintiff's counsel having told Defendant's vendor
5  that Plaintiff was represented by counsel. As such, Defendant is entitled to summary adjudication
6  as to its bona fide error defense, and is not liable under the FDCPA or Rosenthal Act for
7  contacting Plaintiff despite Plaintiff being represented by counsel.

### B. Plaintiff's Motion

9      Plaintiff filed his motion for summary judgment, on in the alternative for summary
10 adjudication of issues, prior to the Court granting his motion to amend the Complaint.

11     Plaintiff first sought summary judgment as to his FDCPA and Rosenthal Act claims arising
12 out of Defendant contacting him even though he was represented by counsel. Because the Court
13 above finds that Defendant is entitled to summary adjudication as to its bona fide error defense on
14 these claims, Plaintiff's motion for summary judgment as to these claims is DENIED.

15     Despite the Court not yet having ruled on the motion for leave to amend, Plaintiff *also*
16 sought summary judgment as to the new allegations he wanted to include in his proposed FAC.
17 *See* ECF 42 at 11 ("In addition to the violations stated above, CAMACHO seeks summary
18 adjudication as to the new claims raised in his proposed [FAC]."). Those new allegations pertain
19 to Defendant's alleged misrepresentation of the amount of the debt. *See* FAC ¶¶ 25-26.

20     Defendant argues that Plaintiff can seek summary judgment only as to issues alleged in the
21 operative pleading at the time the motion for summary judgment was filed. *See* Def.'s Opp. at 3.
22 Defendant is correct that Plaintiff sought summary judgment as to the Complaint, which did not at
23 the time the summary judgment motion was filed include Plaintiff's new allegations and theories
24 of liability from the FAC. The Court recognizes that Plaintiff did so in order to comply with the
25 Court-ordered deadlines in this case. *See* Pl.'s Reply at 6 ("Because CAMACHO is cognizant of
26 the Court's strict deadlines, CAMACHO moved for summary judgment on the new claims so as to
27 not run afoul of the Court's deadline to file dispositive motions."). Although Plaintiff's attention
28 to the Court's scheduling order is appreciated, it remains true that Defendant had not yet

responded to the FAC, investigated the facts, or asserted any affirmative defenses – including bona fide error – as to the new claims prior to the filing of Plaintiff's motion. *See* ECF 42 (Pl.'s motion for summary judgment), ECF 49 (Pl.'s FAC, filed two weeks later), ECF 50 (Def.'s opposition to Pl.'s motion, filed the day the FAC was filed), ECF 58 (Def.'s Answer to the FAC). In this posture, it would be fundamentally unfair to Defendant to require a response to the new theories of liability asserted in Plaintiff's motion.

Additionally, the Court has continued the trial date in this case, and it will entertain a motion to re-open discovery with regard to Plaintiff's new theory of liability, thus allowing Plaintiff the opportunity to re-file this portion of his motion before trial. Therefore, the Court will DENY Plaintiff's motion for summary judgment as to this new theory of liability. This denial is **without prejudice** to Plaintiff re-filing the motion no later than October 16, 2015. Defendant may also file a second motion for summary judgment as to Plaintiff's new theory without further order of the Court.[2] The parties will appear for a hearing on the motion or motions (if filed) on Thursday, December 3, 2015 at 9:00 a.m.

## IV.   ORDER

For the foregoing reasons, Defendant's motion for summary adjudication is GRANTED IN PART AND DENIED IN PART. Defendant's motion is DENIED as to its argument that Plaintiff's counsel did not expressly communicate to Mr. Desai that Plaintiff was represented with regard to the debt, but is GRANTED as to its bona fide error defense.

Plaintiff's motion for summary judgment is DENIED as to his claims regarding Defendant contacting him despite him being represented by counsel, but is otherwise DENIED without prejudice as to his new theories of liability pled in the FAC.

**IT IS SO ORDERED.**

Dated: May 29, 2015

BETH LABSON FREEMAN
United States District Judge

---

[2] Any such motion, and any opposition to such a motion, shall be limited to ten (10) pages. The reply brief for either motion will be limited to five (5) pages.